Our next case is Sarver v. Claiborne Senior Living, Ms. Moran. Thank you, your honors. May it please the court and counsel. My name is Elizabeth Moran from Hall Booth Smith, PC. I represent the defendant's appellants in this case, Claiborne Senior Living and TCABC Real Estate Holding. I will probably refer to them collectively as Claiborne in my argument. Now, as the court knows, we're here on a case that involves a request to enforce an arbitration agreement. This was an agreement signed by Mrs. Sarver for her husband, Gordon Sarver, who suffered from dementia in connection with his admission to a residential care facility. I'd like to first talk of the several issues that we've raised. I want to first talk about the waiver issue, the court's finding that Claiborne waived arbitration by its activities in litigation. Now, since the Morgan case, we evaluate waiver a little bit differently because prejudice is no longer part of the equation. But Morgan reaffirms a couple of important principles here that I think are important for this case. First of all, a waiver is a knowing and intentional relinquishment of a known right. Second is that in evaluating waiver, you look at the actions of the party who holds that right. And then third, although probably more pertinent to some of the other issues here, the court reaffirmed that arbitration agreements stand on the same footing as other contracts. We don't bend over backwards to favor them, but by the same token, we also do not impose obstacles in enforcing them that we're not. In terms of deference, do we give the district court's finding in its text order that your client acted contrary to the court's order on limiting discovery? Your Honor, in terms of deference, the overall waiver finding is a de novo, and factual findings are given deference. The court's text order is very brief and simply says very much what Your Honor just said. Right. Well, tell us, I mean, your goal is to tell us why the court was wrong. Yes. What the court found was, and I think to really evaluate this issue, you have to look at the period of time leading up to the motion for stay and the issuance of those subpoenas. And the three subpoenas was the only specific thing the court cited in its text order in its finding of waiver. So from the beginning of the case on, it's clear that Claiborne was consistently asserting its right to arbitration. And it was kind of... Why do you say that? That doesn't seem right at all to me. Right? It seems like what it says is, we're going to do this litigation, but we reserve the right. We're not going to invoke it now, but we want to reserve the right to invoke it later. Yes. Right? So we want a chance to have a second bite at the apple. That doesn't seem like to me that they get to do this sort of like side preservation. We're going to go forward with the litigation. We're going to engage in discovery. We're not going to assert this right to arbitration. And we know from the Supreme Court that this right to arbitration is a right to like avoid federal court altogether. Right? Coinbase talks about this. The Supreme Court repeatedly talked about what the right is, is to avoid the federal court system. Right? It's not a right to like wait until you start to get bad rulings and then pull the ripcord. Yeah. Right? It's a right to avoid it altogether. Yes. That ideally is the right. But at the time that Clayborne... It seems like to me that you have acted inconsistent with that throughout. Right? And it's not enough for you to say, it seems like to me, in your briefing that like we're going to answer the complaint, but we're not waiving our right to at some point later compel arbitration. You know, there's an affirmative defense here and maybe we will invoke this at some point. Right? That's acting inconsistent, it seems like to me, with what Coinbase describes as the contractual right to arbitrate. Yes, Your Honor. Ideally, when you would want to move to arbitrate as soon as you can. But in the situation here, we have... So why didn't your client do that? We have the... This is a situation where Mr. Sarver was incompetent. And so the wife was signing the agreements on his behalf, which are other issues in the case. The agreements? There were two agreements? With the residency and arbitration agreement. It's an agreement with... Your client had those agreements, correct? The client had the agreements. And by her signature in the agreement, Mrs. Sarver... There's a notation POA. And so when you have an incompetent person who is being admitted or someone is signing for them, you have to be able to establish the authority of that person to sign for them. And did she have the authority to sign that arbitration agreement? Yes, I think for various reasons, which are the other issues in the case, she did have the authority to sign that. How did she have the authority to sign the arbitration agreement at the time it was signed? At the time it was signed, she... Okay, the power of attorney, which Claiborne did not have. It did not have the document. And to enforce the arbitration agreement and be able to establish that a contract was formed, you need to be able to prove that. They did not have that document. That is why they did not move immediately for arbitration. It was not found until much later. Now, that... Wasn't it their document that they had their contract? How did they not have their contract? They had the arbitration contract. They did not have the durable power of attorney that Mrs. Sarver held for her husband that authorized her to sign, which is part of the proof in establishing a binding arbitration. It seems like just an ordinary practice that you would have required the power of attorney at the time. But that is kind of neither here nor there. But, I mean, if you have the agreement and you know you have a right to arbitrate, it seems like that the remaining things, that would just be a matter of proof. And I understand the reasoning in wanting to wait. But when you know you have the contractual right, I'm unclear as to why you didn't proceed straight away and then simply, maybe you did, do discovery or propound interrogatories to establish the validity of the power of attorney. Yes, Your Honor. Without the power of attorney, which is an important part of proof of authority, not the only way to prove authority, but an important part of the proof, Claiborne had to have a good faith basis to move for arbitration with a belief that she had authority. But if she had signed the agreement denoting power of attorney, it seems like that would be a fairly good faith basis to proceed. Well, it's a matter of... If there's no power of attorney, there's a statute, right? And so, like, you know, maybe they don't apply, maybe there are arguments, but it seems like to me you don't get to just sit on your hands and participate in the litigation and go forward and do everything that you do until you start to not like what's happening and then pull the ripcord. Like, that seems to be the problem. And we have some old cases that seem like a little hard here, I get that we say that. But the Supreme Court sort of says, describes what Section 6 instructs us to do when it says that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration. The question is just, like, have you litigated too long? Because by litigating, you're acting inconsistent with the right that you're asserting. You don't get to just, like, do both. And, right, just hold this, like, hammer and reserve and just wait, oh, wait, oh, wait, oh, now the district court's not looking like it's going to be so good for us, so we'll pull the ripcord now. I would point out that, and because of the authority question is determined by state law, South Carolina law, South Carolina is, when you have an incompetent person or a person, someone who is signing for another, you have a non-signature, that the proof demanded in order to show authority can be pretty stringent. And so knowing that there was some kind of POA out there that they did not have, and I would point out that in the initial disclosures, and the parties in federal court were under a scheduling order, so Claiborne had to do what it needed to do to comply with the scheduling order. So it sent out some basic discovery, one of which was a court request to... In a contract action in South Carolina court, is the lack of authority to execute a contract part of the burden, or is it an affirmative defense? So in other words, if I enter a contract with somebody, and I sue to enforce that contract, does my complaint have to show authority, or is it an affirmative defense to say, the person who executed this contract lacked the authority to do so? I thought of it as an affirmative defense. You seem to be suggesting that it is a plaintiff's obligation in a breach of contract case to assert, to prove authority. I thought it was the reverse, but I confess I don't know South Carolina law on this question. I do not have authority for that, Your Honor, but it would be... But if it's an affirmative defense, then you agree that the argument you're making doesn't make any sense, right? Because you then don't have the obligation to prove actual authority. It's just an affirmative defense that might be asserted or not. If it were asserted and there was no POA to be produced, that would be the end of the question. It wouldn't have mattered whose burden of proof it was, because without the POA, there is no proof whoever's burden it is. So as I assume... But you've also raised a claim under a South Carolina statute that even without the power of attorney, that either as a third-party beneficiary or under the statutory language for a spouse, that this authority would exist. So, I mean, was that just a later discovered potential means of recovery for your client? I mean, it seems like that would have been there from the very beginning of the action and would have informed the decision on when to move for arbitration. The POA that... The notation POA... Claiborne was looking for a general durable power of attorney. And the one that Mr. Sarver signed could not be found because it was not recorded where he resided at the time. Did you have the health care power of attorney? At some point, it was produced in discovery. But you didn't have... So when you took this person into your care, in your facility, you had no health care power of attorney? You just took him without any indication that there was a decision maker for somebody who was incapacitated? It was in reliance on Ms. Sarver's representations that she was his... So you'll take a person in reliance on those representations, but you won't rely on those representations for purposes of invoking the Arbitration Act? And that seems like an odd arbitration clause. It's like an odd... Like, we get to rely on her over here for all these things, but we don't need to rely on her at all when she says that she is a power of attorney. Like, we can just ignore that. Well, there's proof for legal purposes, and then there is what you do in conducting business. And I think the two are separate, Your Honor. I see that I am into my rebuttal time. Not yet. No, you've got... Oh, I'm sorry. You're still good. All right, thanks. Do you... I see the POA written here next to Ms. Sarver's signature. I know that she, in an affidavit, alleges that that's not her handwriting, and that she didn't write that. Do you know when that was written, or who wrote that? It was apparently written at the time of the signature. She says she did not write it. We do not know who wrote it, but looking backward at the time when the suit was filed, it was seen there was POA. The thinking was, there is a POA out there. A request was made to plaintiff, is there a POA? Nothing was produced. The general power of attorney was not produced at that time. It turned out not to be valid anyway, because it was recorded four days after he was admitted. So that was what... So even if she had a power of attorney at the time, it's admittedly invalid, and so she would have been unable to sign the arbitration agreement? Under the general durable power of attorney, but not under the Health Care Consent Act, and the health care power of attorney, which empowered her, a decision the court really didn't address at all, empowered her to do what was necessary. Did you have the Health Care Consent Act when you admitted this man into your facility? Was that within your authority? You disclaim knowing anything about any of the power of attorneys. Did you know about the act when you admitted him? I didn't know what the facility knew at the time he was admitted. But if it was a duly enacted law of the state of South Carolina, that wouldn't make any difference whether they knew about it or not. Well, you're deemed to know the law. So the act existed at the time. All right. Well, you are into a little over time now. So you've got some rebuttal time. We'll now hear from Mr. Quinn. Okay. Thank you, Your Honors. Good morning, Your Honors. May it please the court, I'm Elliot Quinn. I represent the estate of Gordon Sarver. I would start with touching on some of the points that Your Honors raised a moment ago. Judge Agee, first your question as to deference. Understand that legal determinations made by the district court are reviewed de novo. Factual determinations, though, are entitled to deference. And here, as to your question about violation of the state order, that is entitled to factual deference in terms of finding that there was a violation. The lower court, yes, there's a text order that indicates it was violated. There's then a motion for reconsideration in which appellants outlined in detail why they contended that that was excusable and was a mistake. District court reviewed all of that and yet still made the factual finding that there was a waiver that they had engaged in this conduct. They had violated the state order. The second order doesn't say very much. Your Honor, I also wish that I could come before you with a more detailed order. Your Honor, as are you, I'm kind of left to read the tea leaves as to why we have two text orders in the way we do. I'm happy to give you my thoughts there, but they're nothing more than my guesses. They seem to be making the argument, setting aside what we've already discussed. They seem to be making the argument that we thought that Mrs. Sarver and her counsel had agreed that we could engage in this limited discovery. And there are three specific consents, it would appear, to do so. And that then after that, Mrs. Sarver, through counsel, which I presume was your firm, said we were never aware of this before and now this is a violation of the order that the court has entered. That part, at least, seems sort of dubious to me. Your Honor, if I can walk through the timelines and the facts there. We have a situation where opposing counsel sent over Mr. Sarver's attorneys, my firm, these subpoenas and indicating that they were going to serve these subpoenas if we did not object. Again, this is all before we get to a motion for stay being filed or a stay order being entered. Of course, we don't have any issue with opposing counsel obtaining medical records. We contend this case should remain in district court. They would be entitled to do that. We don't have any objection. Actually, it helps our position because it's them engaging in further discovery and them basically availing themselves of the court. We don't want to be in arbitration, so if they want to continue to engage in acts of waiver, we will let them. But the court granted the motion to stay discovery two days before your colleagues signed the waivers. Again, Your Honor, if they want to engage in this, all we are indicating is we're not going to raise any objection to this. If you want to issue these subpoenas, then you can do so. We don't have any objection to you obtaining his medical records. We cannot, though, allow them around a court order. If they're going to go ahead and issue the subpoenas in violation of a court order, then they are violating the court order. We can't excuse their violation for them. At no point had we ever indicated that we consent to changing or agreeing to forego the court's order. It seems like a pretty slick rationalization after the fact. Your Honor, I would return to, again, I would suggest that their position seems to be that we need to save them from themselves. We owe them no obligation to save them from themselves. If they are going to engage in this conduct, if they are going to send subpoenas, have at it. We don't want to arbitrate. We want you to have waived your right to arbitrate to have continued to do that. Agree, Your Honor, it is an odd situation in that they are presenting us with this, but again, we suggest we have no obligation to save them from themselves. They are counsel for that party and they are obligated to represent that party. We don't owe any obligations to that party. Your Honor, I was then going to turn to Judge Richardson's questions as to this idea you can't just preserve the right, you can't just allow it to sit there and say we are going to use this as our backup but we are going to go forward trying other things until we don't like where we are. Here they did. They got things that they would not be able to get in arbitration. There is one old case, maybe it is no longer good after Morgan, but it does suggest that this idea, as long as you persist in your assertion, as long as I just write at the end of everything that I do, I have a right to arbitrate and I might one day invoke it, that maybe somehow preserves that right and that is what maybe the court suggested is persisting in your claim. What is your response to that argument? That seems to be in essence the main argument they are making against waiver here is that by putting this caveat in our answer and the things that follow that caveat is enough to hold on to the right. There is some appeal to that. Help me understand why that is not right. I can't tell you the exact moment but for a certain period of time, sure, that makes sense. Your client needs to collect documents. You have just gotten into this case. You need to preserve. If you have opposing counsel on the other side that is immediately wanting to take depositions and go through discovery, sure, but at some point you have to have gotten to this position where the opposing party has allowed so much delay and has engaged in conduct where they have actively participated in litigation, they have availed themselves of the federal court and the judicial process and then that has caused the switch over to just simply sitting there and saying I am preserving it is no longer good. It can't be that you can get up to the eve of trial. We are picking a jury and you come up and say I have been preserving this this whole time. It's been in a footnote in everything that I have filed but we don't like how the first half of trial has gone so we are going to invoke it now. It turns out I want to invoke it now. A main component of that, part of it has to be time but another part of it has to be have you engaged in actions that are inconsistent with your right to arbitration, discovery, depositions, subpoenas, what have you done before the federal court and that must cause that switch. What I was mentioning a moment ago... Can you read this line? This line from Morgan seems to say a party by litigating too long waived its right. That seems to suggest from the Supreme Court that time actually does matter. Maybe it's not sufficient on its own but it does seem like time is a pertinent consideration. Is that how you read this line out of Morgan? Your Honor, that is how I read that line and going back to your questions a moment ago I can't tell you if it's a week, a month or two months but there has to be some amount of time even if the party isn't actively litigating that you have allowed the case to proceed so long in court that you have now waived your right. And you also agree that you've allowed it to proceed in court after having knowledge of the arbitration agreement. If for some reason you've got a legacy company or the like and they don't have knowledge but if they don't have knowledge they wouldn't be persisting in the right to begin with they would then show up and say, hey, we just found this agreement, it just came out in discovery we are now going to assert it immediately. In that instance, time wouldn't matter in your view because there would be a lack of knowledge and you can't unknowingly waive it. I agree, Your Honor, and then you could put something in the record an affidavit, we discovered this agreement existed on this date. And I would mention, Your Honor, to that point some of the cases cited by opposing counsel as to this issue, they want to conflate this power of attorney with those other cases they all dealt with the party did not yet have a copy of the arbitration agreement. That is very different from this issue of did we have a copy of a power of attorney? Do you have a view on whether this authority to execute a contract is an affirmative defense or part of the plaintiff's burden in a standard breach of contract case? I would suggest it's an affirmative defense, Your Honor. Suggest? The real answer is you don't know either. No, Your Honor, my recollection of South Carolina contract law going back to its most basic is offer acceptance consideration. That's all I need to show and then a breach. But you might say acceptance includes a sub-component, right? It can't be acceptance by a random person. You and I can't enter a contract when my law clerk accepts it, right? The acceptance has to be by somebody who is pertinent, right? And then, Your Honor, you do and that is the complicating factor in my mind as well you get into this issue of we don't actually have just two people involved here. We have the third. And then, Your Honor, so what I heard after I talked about they availed themselves and obtained things they wouldn't get in arbitration, what I heard here as the reasoning was that they did not yet have a copy of the power of attorney. And, Your Honor, I would suggest that that doesn't get them where they need to go for multiple reasons. First would be if having this power of attorney is so important they would have asked for it at the time of entering into the contract. Somebody noted POA on there they should have asked, we need a copy of this so we can determine that we are actually entering into a contract. I thought you would have led with their own contract showed power of attorney and that would be all they would need to allege is their reasonable belief that acceptance was witnessed by that part of the contract before you would go on to anything else. Thank you, Judge Agee. That's where I was going to head next. You could ask for it. You could also just move based on the notation of POA. You also, as you indicated earlier, Judge Agee could have asked to engage in limited arbitration only discovery and asked produce copies of any power of attorney. I submit to you that the personal representative Ms. Sarver did not have copies of this power of attorney. Actually, she did not know of the general durable power of attorney. That's why it wasn't produced in the discovery that did occur. I believe Judge Agee, you touched on this. It's also unavailing because what I heard opposing counsel say a moment ago was they needed a good faith basis to move to compel arbitration. They have third party beneficiary equitable estoppel and the adult health care consent act that they are all using as basis for compelling arbitration. Today, they have now conceded away the general durable power of attorney and are only proceeding on those three. Those must be a good faith basis on which they could move to compel arbitration. I also find it notable that you filed your complaint in May of 2023 served it very quickly and then in the answer one of the affirmative defenses is arbitration and that was in June. There was knowledge that there was arbitration there was knowledge that that was an affirmative defense and yet the motion to compel was not filed until the following March, so ten months later. In the interim, there was significant amount of discovery not only these subpoenas but there were depositions. Were there not at least one deposition? You're correct, Your Honor. There were three depositions. Three depositions noticed by plaintiff's counsel, by Mr. Sarber's counsel but in which all three of which appellant's counsel also questioned the witnesses. Was there any notation on the record or saying we're doing this under duress or that we're required to do it that we have no choice but we still think we should be arbitrating? Your Honor, this goes back to Judge Richardson's point about preserving. Maybe they didn't even because no, Your Honor, there was not. There is nothing any indication that we object to this we think we have arbitration rights but we aren't ready yet so we're only allowing this, preserving that. Additionally, Your Honor, my firm on behalf of Mr. Sarber, we issued I believe it was either five or six subpoenas to obtain documents. We did receive an objection from opposing counsel to those subpoenas. That objection was limited to their reading of one of the discovery rules of the Federal Rules of Civil Procedure and in no way mentioned any arbitration rights which again would go to they are not preserving this if they think they have it. If no further questions, I can turn to other items. There are a number of additional issues on which opposing counsel contends that arbitration should be compelled here. I would note that If you prevail, I'm not telling you to stop talking maybe I am but I'm not really. If you prevail on waiver, we don't have to sort through the various powers of attorney and statutory authority to enter the agreement. If the appellee prevails on waiver you do not need to deal with any of the other issues. If the appellee prevails on the meeting of the minds issue you would not need to deal with any of the other issues. Those two would dispense with all of the others. And then if I was to turn to all the others I will take your bail suggestion but if I was to turn to all the others I would suggest with each of the others there are numerous preservation problems that are an issue for each of those. And then on the merits as we have dealt with in our brief each of those don't get the appellants where they claim that they get. If we are talking about third party beneficiary the appellants are applying old law that is no longer good law under South Carolina's third party beneficiary law and under South Carolina's equitable estoppel law Mr. Sarver just obtaining a room The district court never got into this did it? Your honor the district court never did. And your honor I would suggest that were you to disagree with our position on waiver and meeting of the minds and the district court's position on those you certainly could send it back for the district court to deal with those other issues although you also can review de novo and could deal with those. You have not really argued that the durable power of attorney provided a basis here. Like that seems to be what the district court relied on. That seems to be wrong. You have lots of counter arguments to that. The healthcare power of attorney, the statute, all of those different arguments. But you're not arguing that the durable power of attorney actually gave her authority. Your honor the district court found that the durable power of attorney did not give Mr. Sarver authority. I'm sorry I just had that backwards. You're right. And then your honor would suggest Because it was not recorded in the appropriate locality. Both it was not recorded in the county in which Mr. Sarver resided and also it was recorded after the arbitration agreement was entered into and the law requires that it be recorded prior to that. So for those reasons it is not valid and I would suggest that reading opposing counsel's briefing and I believe it was in a footnote. They have now conceded and they do not raise it as an issue on appeal. They have conceded that the general durable power of attorney did not provide Ms. Sarver with authority. They have to rely on the adult healthcare consent act third party beneficiary or equitable estoppel to get themselves there if they can show authority. If no further questions for the court I'll yield the remainder of my time. Thank you very much. Ms. Moran you've got some rebuttal time. Thank you your honors. I sense that it's important to talk about the waiver issues but before going to that I do want to make a quick point about Ms. Sarver's authority under the healthcare consent act and the healthcare power of attorney as well. I assume you would agree if we found that the district court did not err in terms of the waiver issue there's no need to get to anything else.  But should the court get to that issue the important thing to remember about that argument is that under that statute and under the healthcare power of attorney if an arbitration agreement is necessary to obtain the healthcare that the patient is looking at then the arbitration agreement is within their spouse's their designee's authority to enter into that agreement. So if you look at the Coleman case and the Thompson case in those cases the arbitration agreements were optional. They were opt out arguments. They were voluntary. Did not have to sign to be admitted to the facility. This case stands on different grounds because it was not an optional contract it was a condition of admission. So because it's a condition of admission it's necessary to obtain Mr. Sarver's healthcare admission to this facility and therefore Ms. Sarver has the authority under both the healthcare consent act and the HCPOA to do those things. Now going back to the waiver issue and I want to make sure to certainly answer any questions the court has but a couple of points I'd like to point out is that the subpoenas that were issued this was after the motion to compel was filed and I think as the court maybe alluded to there was a lot of discussion back and forth leading up to that there was a flurry of emails about a discovery deadline coming up and concerns about getting discovery done while the motion to compel arbitration was pending what happens if arbitration is denied and we haven't done discovery. Concerns like that. At the same time defense counsel is concerned about There is a way to solve that right? You can stay it? Yes. So what happened was there were these emails back and forth defense counsel proposed to stay plaintiff's counsel would not agree to a stay towards the end of the day defense counsel files the motion to stay which requests a stay of the discovery deadline or stay of discovery it's not quite clear but anyway that motion is filed and then moments later is when plaintiff's counsel emails back and says we will agree that your continued participation in depositions will not be argued as a waiver. I'm paraphrasing a little bit. Defense counsel understood that Did you make these factual arguments before the district court on the motion for reconsideration? In the motion for reconsideration and the district court made a factual finding on that issue? The district court simply denied the motion for reconsideration and said it didn't address any of those circumstances. These emails were in front of the district court? Yes. There are a number of important emails One is an email from defense counsel to her paralegal saying okay we can do these subpoenas now as there is an agreement that discovery will not waive arbitration Her understanding is that there is agreement that discovery The paralegal's understanding? No the counsel's understanding She understands that discovery can proceed without the waiver and then she sends these subpoenas the copies of the subpoenas to plaintiff's counsel here we are planning to do this let us know if you object and then plaintiff's counsel signed waiving any objections I tend to agree with you that all that is a little on the squirrely side but this comes after a fairly long delay since the filing of the suit and I think that may be probably the greater difficulty here is active participation in the suit prior to the issuance of these subpoenas while there was the capacity to have asked for arbitration from the first day I do want to emphasize that Claiborne's participation in the litigation was as minimal as they could do to keep in compliance with the court's orders did not take any depositions did not file any substantive motions and I see my time has expired Thank you very much Thank you, your honor We're going to take a very brief recess and so if your counsel for our remaining cases don't wander too far We'll take a brief recess
judges: G. Steven Agee, Julius N. Richardson, Nicole G. Berner